# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MELISSA S.[1],

                                       Plaintiff,

        v.                                1:17-CV-995 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.

---

JOSEPHINE GOTTESMAN, ESQ., for Plaintiff
SIXTINA FERNANDEZ, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 11, 2014, alleging disability beginning July 1, 2013. (Administrative Transcript ("T") at 15, 49, 140-48). Her applications were denied initially on October 2, 2014. (T. 134-51). Administrative Law

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Judge ("ALJ") Dennis G. Katz conducted a hearing on April 21, 2016, at which plaintiff and Vocational Expert ("VE") Robert Baker testified. (T. 32-48).

In a decision dated April 27, 2016, the ALJ found that plaintiff was not disabled. (T. 12-31). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 17, 2017. (T. 1-6).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

2

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the April 21, 2016 administrative hearing, plaintiff was 45 years old. (T. 25, 140). She resided with her ten year old daughter, and had an older daughter who lived nearby and visited frequently. (T. 37, 39, 317). Plaintiff completed the eighth grade in regular education classes, before leaving school. (T. 161). She subsequently obtained her G.E.D. (T. 317). Plaintiff worked as a school bus driver for approximately ten years before leaving that position in 2010. (T. 44-45). After leaving

4

that position, she worked as babysitter for a neighbor's child. (T. 45, 151). She only reported earnings from this position in 2013, but the record indicates that she may have worked irregularly as a babysitter after that date.[2] (T. 45, 155, 223, 314, 1637).

Plaintiff had a history of carpal tunnel syndrome, and was diagnosed with fibromyalgia in 2013. (T. 245-46, 253). She testified that she experienced significant pain and neuropathy as a result of these conditions, and was "constantly dropping things" due to the pain and numbness in her hands. (T. 42-43). She also experienced regular shortness of breath that had been attributed to emphysema and/or chronic obstructive pulmonary disease ("COPD"). (T. 265, 323, 642).

Plaintiff also had a history of mental health impairments, including depression, anxiety, and post-traumatic stress disorder ("PTSD"), that she identified as the primary reason for her inability to work. (T. 36, 317). She first received mental health counseling at age ten, and was hospitalized after attempted overdoses as a teenager and in her twenties. (T. 243, 254, 318). She received intermittent psychiatric treatment during that time. (T. 254, 317). Plaintiff's mental health symptoms increased significantly after the tragic death of two of her teenage sons in January 2013. (T. 236, 254). She reported difficulty sleeping, crying spells, and a desire to isolate herself from others that kept from her leaving the house. (T. 36-37, 318).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 17-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by

---

[2] The ALJ did not find that this work rose to the level of substantial gainful activity.

plaintiff.

## IV.   **THE ALJ'S DECISION**

After finding that plaintiff met the insured status requirements through

September 30, 2018, the ALJ found that plaintiff had not engaged in substantial gainful

activity since her alleged onset date of July 1, 2013. (T. 17).  Next, the ALJ found that

plaintiff had the following severe impairments at step two of the sequential evaluation:

obesity; a back impairment; a pulmonary impairment[3]; an impairment of the upper

extremities; a bipolar disorder; and posttraumatic stress syndrome ("PTSD"). (T. 17-

21.)  At the third step, the ALJ determined that plaintiff's impairments or combination

thereof did not meet or medically equal the criteria of any listed impairments in

Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 21-23).

The ALJ found at step four of the analysis that plaintiff could physically perform

the full range of light work, but was limited to unskilled tasks. (T. 23-25).  In making

the RFC determination, the ALJ stated that he considered all of the plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on the

requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSR")

96-4p. (T. 23).  Finally, the ALJ stated that he considered opinion evidence pursuant to

20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

---

[3] Although the ALJ listed "a pulmonary impairment" as severe, the ALJ also stated that
"plaintiff's pulmonary impairment is considered to be non-severe," because it was controlled by
medication. (T. 17, 21).  Plaintiff has not challenged this inconsistency, and it does not appear to
have impacted the ALJ's RFC determination, which included a discussion of the functional
limitations imposed by plaintiff's emphysema and/or COPD.

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 24). The ALJ then determined that plaintiff was unable to perform her past relevant work. (T. 25). However, "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 26). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date of July 1, 2013 through the date of the ALJ's decision. (*Id.*)

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.     Plaintiff's impairments met or equaled the severity of Listing 12.04 and 12.06. (Pl.'s Br. at 20-22) (Dkt. No. 11-1).

2.     The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 22-27).

3.     The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 27-28).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-20) (Dkt. No. 14). For the following reasons, this court agrees with defendant and will dismiss the complaint.

**DISCUSSION**

## VI.    LISTED IMPAIRMENT

### A.    Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B.    Application

As discussed above, the ALJ found that plaintiff's PTSD and bipolar disorder were severe impairments. (T. 17-20). The Commissioner has made no argument that these impairments failed to satisfy the paragraph A criteria for Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).[4] The ALJ's step three determination

---

[4] Listings 12.04 and 12.06 consist of a statement describing the disorders included in the listing, paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations), and paragraph C criteria (additional functional criteria). Typically, the ALJ will assess the paragraph B criteria first, and will only assess the paragraph C criteria if he or she finds that the paragraph B criteria are not satisfied. An ALJ must find that a claimant has a listed impairment if the diagnostic description in the opening statement and criteria of both paragraphs A & B, or A &C are satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

focused on whether plaintiff satisfied the paragraph B or C criteria for either listing. (T. 21-22).

To satisfy the paragraph B criteria for Listing 12.04 and/or 12.06, plaintiff must show that her mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (B), § 12.06 (B). A "marked" limitation means "more than moderate, but less than extreme;" or one that "interferes seriously with [plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." *Gagnon v. Comm'r of Soc. Sec.*, No. 7:14-CV-1194 (GLS), 2016 WL 482068, at *4 (N.D.N.Y. Feb. 5, 2016) (quoting 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(C)). "Repeated" episodes of decompensation means "three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks," or more frequent episodes of shorter duration, or less frequent episodes of longer duration which are determined, in an exercise of judgment, to be "of equal severity." *Id.*

The ALJ found that plaintiff had no restrictions with regard to her activities of daily living, citing record evidence that plaintiff was able to drive an automobile and provide regular childcare, as well as the lack of treatment notes or other medical evidence to suggest such restrictions. (T. 21). The ALJ also found no difficulties in plaintiff's social functioning, with the only reference to such limits in plaintiff's treatment notes being a reported increase in social anxiety around the holidays. (*Id.*)

9

The ALJ next found that plaintiff had mild difficulties with regard to concentration, persistence, or pace that would preclude unfamiliar, highly complex work tasks, based on record evidence that plaintiff had "some degree" of concentration deficits in 2016. (T. 22, 1732). The ALJ also reviewed the record and found one episode of decompensation that lasted approximately three weeks, and required a period of psychiatric hospitalization. (T. 314-15). Based on these findings, the ALJ determined that plaintiff's mental impairments did not meet the paragraph B criteria for Listing 12.04 or 12.06. (T. 22).

The ALJ then concluded that plaintiff did not meet the paragraph C criteria because there had not been multiple episodes of decompensation of extended duration; there was no indication that a change in plaintiff's schedule would cause her to decompensate; and plaintiff had demonstrated no difficulties living independently and performing normal activities of daily living. (T. 22, 319-20).

An ALJ need not provide a specific rationale for finding that an impairment does not satisfy listing criteria, so long as the determination is supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 274 (N.D.N.Y. 2009). Here, the ALJ gave significant detail to support his step three determination. This determination is also consistent with the opinion of state agency psychologist Dr. M. Marks, who reviewed plaintiff's medical records in September 2014 and opined that plaintiff's impairments did not meet or equal Listings 12.04 or 12.06. (T. 49, 55-56).

Plaintiff's conclusory argument that "there can be no doubt" that plaintiff met or

equaled Listings 12.04 and 12.06 fails to meet her burden of proof. No treating or examining health professional has opined that plaintiff's impairments are of listing severity. In making this argument, plaintiff relies upon references in treatment notes to plaintiff's diagnosed depression, anxiety, and PTSD, but fails to identify how plaintiff meets all of the necessary listing criteria. Instead, plaintiff essentially requests that the court re-weigh the medical evidence and find that the ALJ's determination was not supported by substantial evidence. Resolving conflicts in the evidence is the province of the ALJ. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389. 399 (1971)); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (the court must defer to the Commissioner's resolution of conflicting evidence).

Even if plaintiff exhibits some of the required signs and symptoms required by Listing 12.04 or 12.06, that does not meet plaintiff's burden at step three to show that she meets all the requirements of a particular Listing. Therefore, this court finds that the ALJ's determination that plaintiff's impairments did not meet or equal the severity of a Listed Impairment was supported by substantial evidence.

## VII.  RFC EVALUATION/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A

"regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

## 2.    Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that

are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a

claimant's symptoms to determine the extent to which it limits the claimant's capacity to function.  20 C.F.R. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3), 416.929(c)(3).

### B.    Application

As stated above, it is the province of the ALJ to resolve genuine conflicts in the record.  *Veino*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and plaintiff's testimony by assigning the greatest weight to that evidence that he deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta v. Astrue*, 508 F.

App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1.     Physical Limitations

As noted above, the ALJ found that plaintiff could perform the full range of unskilled light work. (T. 23).  Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly the evidence regarding plaintiff's fibromyalgia and her difficulty using her hands. (Pl.'s Br. at 24-25).  This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching the physical RFC determination, the ALJ gave "some evidentiary weight" to the opinion of Dr. Rita Figueroa, who performed a consultative examination of plaintiff on September 26, 2014. (T. 24, 323-26).  Dr. Figueroa opined that plaintiff had no limitations with regard to walking, standing, bending, lifting, carrying, pushing or pulling. (T. 326).  The ALJ discounted Dr. Figueroa's opinion that plaintiff "may have mild limitations for activities requiring free hand manipulation due to carpal tunnel syndrome, multiple surgeries, and now weakness," because this conclusion was inconsistent with Dr. Figueroa's own examination notes. (T. 24, 326).  During the examination, Dr. Figueroa found that plaintiff's hand and finger dexterity was intact,

and plaintiff had full bilateral strength in her hands and arms. (T. 326). Plaintiff was also able to use her fingers to zip, button and tie. (*Id.*) The ALJ's decision to discount specific portions of the consultative opinion was within his discretion. *See Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.' This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement . . . .").

The ALJ also considered plaintiff's testimony regarding her diagnosed emphysema, but found no functional limitations that resulted from this condition. (T. 24). Although plaintiff was a smoker, her chest and lungs sounded normal and she did not display any shortness of breath during the consultative examination. (T. 325).

Plaintiff contends that the ALJ's analysis of her physical limitations failed to address her diagnosed fibromyalgia, and the resulting restrictions caused by her pain and neuropathy. (Pl.'s Br. at 24-25). Generally, a plaintiff's subjective testimony is not a basis for a disability finding, in the absence of corroborating objective medical evidence. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009). When, as in this case, a plaintiff alleges pain that exceeds the objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the claimant's functional capabilities. See 20 C.F.R. § 404.1529(c)(3)(i)-(iv);

16

416.929(c)(3)(i)-(iv); *see also Brown v. Comm'r of Soc. Sec.*, 3:16-CV-941 (WBC) 2017 WL 3034311, at *8 (N.D.N.Y. July 17, 2017) (remanding where ALJ failed to consider plaintiff's daily activities and treatment for fibromyalgia in formulating RFC).

The ALJ did so in this case, by evaluating plaintiff's unrestricted daily activities, that included driving a car, caring for her daughter, babysitting a neighbor's child, daily cleaning and cooking, and weekly laundry and grocery shopping. (T. 21, 319-20, 324). The ALJ considered plaintiff's testimony that she had difficulty holding everyday objects without dropping them, but he found no objective support in the record to suggest that plaintiff had difficulty handling or fingering objects for any twelve month period of time. (T. 24). He recognized that plaintiff reported numbness and loss of feeling in her hands in 2012 and 2013, but found that her treatment records reflected improvements in this condition with B12 vitamin supplements. (T. 24, 289, 300). In considering this issue, the ALJ also noted that plaintiff had not received consistent medical treatment for her pain, but that the record showed improvement in her symptoms with treatment. (T. 24). The record includes a July 2014 nerve conduction study that showed normal results, with no evidence of neuropathy. (T. 1518-19).

## 2. Mental Limitations

Plaintiff also contends that the ALJ erred by failing to properly account for plaintiff's mental limitations in his RFC determination. (Pl.'s Br. at 26). This court finds that the ALJ's consideration of the impact of plaintiff's anxiety, depression, and PTSD on her RFC was supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave "significant evidentiary

weight" to the opinion of Dr. Leslie Helprin, who performed a consultative psychiatric examination of plaintiff on September 17, 2014. (T. 25, 317-21). Dr. Helprin opined that plaintiff showed no limitations in her ability to: follow and understand simple directions and instructions; perform simple and complex tasks independently; maintain attention and concentration for tasks; maintain a regular schedule; make appropriate decisions; and relate adequately to others. (T. 320). She also opined that plaintiff showed "moderate" limitations in her ability to deal with stress, but that plaintiff's psychiatric problems did "not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." (*Id*.) Dr. Helprin found that plaintiff's overall prognosis was good with continued psychiatric treatment and medication management , but that plaintiff "may benefit from vocational training for an initially supported job . . . ." (*Id.*)

During the consultative examination, plaintiff was cooperative, and demonstrated an adequate manner of relating, social skills, and overall presentation. (T. 318). She showed coherent and goal-directed thought patterns with no evidence of hallucinations, delusions, or paranoia. (T. 319). She had intact attention and concentration, but showed mildly impaired memory skills. (*Id*.) Her mood was generally neutral, with "some brief episodes of dysphoria and some positive smiling and even laughter. . . ." (*Id*.). Plaintiff reported no difficulty performing activities of daily living. (T. 319-20).

The ALJ also reviewed plaintiff's treatment record, including a three week hospitalization due to exacerbation of PTSD symptoms and major depression in March and April 2014. (T. 18, 314-315). The ALJ noted numerous instances in the record

where plaintiff's noncompliance with psychiatric medication led to an increase in her symptoms, and a resulting improvement when plaintiff received consistent psychiatric care. (T. 19, 220, 264, 388, 402, 1637, 1685). The record also shows that plaintiff was able to function despite her mental impairments and stressful events, including active participation in a bereavement group, babysitting for a neighbor, and coordinating a move when she was unexpectedly evicted from her home. (T. 19, 220, 223, 225, 241, 406, 1637).

The ALJ also considered a mental impairment questionnaire prepared by Tenise Wall, a social worker who was involved in plaintiff's treatment beginning on January 1, 2016. (T. 19-20, 1728-1736). Ms. Wall provided a check-box opinion that included minimal narrative explanation for her opinion, and omitted certain sections, such as "Mental Abilities and Aptitude Needed to Do Unskilled Work," because Ms. Wall was "currently unable to evaluate" those areas. (T. 1730). In the clinical findings section, Ms. Wall qualified her opinion by noting that it was primarily based on client's reported symptoms. (T. 1728, 1732). Noting that the opinion came from a "non-acceptable" medical source, the ALJ assigned "very slight weight" to Ms. Wall's opinion that plaintiff had "moderate" restrictions with regard to activities of daily living and maintaining concentration, persistence, or pace, and "extreme" limitations with regard to social functioning. (T. 19, 1732). Still, the ALJ incorporated some of Ms. Wall's findings into his determination that plaintiff was unable to perform new, highly complex work tasks. (T. 22).

The ALJ determine the functional limitations imposed by the combination of

plaintiff's physical and mental impairments after considering the objective medical evidence, relevant medical opinions, plaintiff's daily activities and the hearing testimony. Therefore, this court concludes that the ALJ's determination, that plaintiff's diagnosed depression, anxiety, and PTSD did not impose any functional limitations that would interfere with plaintiff's ability to perform "substantially all" unskilled light work, was supported by substantial evidence.

### 3.     Development of Record

The record contains treatment notes from Licensed Master Social Worker Catherine Westbrook, who treated plaintiff in 2014 and 2015. (T. 222, 227-236, 411-419, 420-426). The ALJ cited some of these treatment notes in his decision, but was not provided, and did not request, an opinion as to plaintiff's ability to perform work-related activities. (T. 19, 418-420). Plaintiff contends that the ALJ had an obligation to contact Ms. Westbrook and request her opinion. This argument is unpersuasive.

It is well-settled that, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing inter alia *Correale Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512, 416.912 (2010)).

This duty arose if the physician's report was "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. §§ 404.1512 (e)(1) and 416.912(e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The court applies the section in effect when the ALJ adjudicated plaintiff's claim. *Id.* The ALJ's decision in this case is dated April 27, 2016, thus, the new section applies.

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies and is designed to afford adjudicators "more flexibility." *Perrin v. Astrue*, No. 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How We Collect and Consider Evidence of Disability, *supra*). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)).

Despite the duty to develop the record, remand is not required where the record

contains sufficient evidence from which the ALJ can assess the plaintiff's residual functional capacity. *Covey v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). Here, the ALJ had plaintiff's full medical and psychiatric treatment record, as well as consultative examination reports. As set forth in his decision, the ALJ took the entire record, including Ms. Westbrook's treatment notes, into account when determining plaintiff's RFC. Plaintiff has not identified any gaps in the record that the ALJ could have filled by exercising his discretion to contact Ms. Westbrook, or taking one of the other approaches outlined in the regulations. In addition, the ALJ provided plaintiff an opportunity to supplement the record at the administrative hearing, and plaintiff declined. (T. 34-35).

## VIII. <u>STEP FIVE DETERMINATION</u>

### A. **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.*

22

The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[5] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

### B. Application

At the administrative hearing, a VE testified on the nature of plaintiff's prior work, and potential impacts on plaintiff's general ability to complete an eight hour workday if fatigue or other impairments forced her off task. (T. 46). The VE was not

---

[5] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

questioned, and therefore did not testify, on the types of jobs in the national economy that plaintiff could still perform. (T. 46-47). In reaching his step five determination, the ALJ instead relied on the Grids to determine that plaintiff could perform a significant number of jobs that were available in the national economy. (T. 26).

Plaintiff contends that the ALJ's reliance on the Grids was error requiring remand. (Pl.'s Br. at 27-28). This court disagrees. Before applying the Grids, the ALJ concluded that plaintiff's non-exertional impairments would have minimal erosive effect on the occupational base, because plaintiff "was mentally capable of performing substantially all unskilled jobs." (T. 25). This determination, based upon an RFC that was supported by substantial evidence, is consistent with Dr. Helprin's consultative psychiatric opinion that plaintiff's mental impairments "do not appear significant enough to interfere with [plaintiff's] ability to function on a daily basis." (T. 319-20). Because the ALJ analyzed whether plaintiff's nonexertional impairments "significantly eroded" her occupational base, he did not commit legal error by relying on the Grids to make his step five determination. *See Hurd v. Astrue,* No. 10-CV-1116 (DNH), 2013 WL 140389, at *4 (N.D.N.Y. Jan. 11, 2013); *see also Bistoff v. Colvin*, No. 1:14-CV-984 (MAT), 2017 WL 2772282, at *6 (W.D.N.Y. June 27, 2017) (collecting cases).

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated:     January 14, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge